## BRASSEL et v BENHAM et

Ohio Appeals, 2nd Dist, Clark Co

No 333. Decided Feb 17, 1934

R. Stanley Lucas, Springfield, for plaintiffs.

Orville Wear, Prosecuting Attorney, Springfield, for defendants.

## OPINION

By BARNES, J.

So far as we can ascertain from the evidence, only two of these machines were placed in the hands of merchants within the bounds of Clark County. One was within the City of Springfield and the other in an unincorporated village in the county.

It appears from the evidence that these two machines were placed with their customer merchants under their regular contract on the same day that same were seized by the officers and that it was known to them that such action was intended by the officers. In other words, we gather from the record that the seizure was prearranged and the action following is intended as a test case. Under such an arrangement, we would expect a studied effort on the part of plaintiffs and their merchant customers to strictly comply with the law, if possible. None of the potential possibilities of the vending machines as gambling devices are or would be presented in the evidence of their actual operation prior to the seizure. It is the desire of the plaintiffs to have these vending machines legalized through order of the court.

Under this situation this court will not feel inclined to extend its protecting arm to cover these vending machines in view of the evidence clearly disclosing that two or more persons may operate such machines without violating the copyrighted plate and yet be gambling. Plaintiff Brassel, in his testimony, as shown on pages 36 and 37 of the record sanctions the two-man play as such compliance.

These machines of the plaintiffs' operate in the following manner: A five cent coin is placed in the slot, a lever is pressed thereby revolving cylinders within the machine. By the turn of a lever, a package

of mint will drop into the container for the player. When the cylinder stops, a movable dial, seen through a glass, will either read "No", or the figures, 2, 4, 8, 12, 14, 16 or 20. This dial indicates what will happen on the next play. If the word "No" appears, it means no coupons. If either of the figures enumerated appear, this number of coupons will be dropped into the container for the player on the next play, and these are good in trade for five cents each. However, the individual who made the first play can not make a consecutive play, and if, perchance, the dial should show up 20 he can not play the second time, or if he does, the coupons will not be redeemed. Any other individual may step up at once and deposit a five cent coin and he will receive the coupons. It is the claim of the plaintiffs that these vending machines termed "Silent Salesmen", will stimulate the sales through the entertaining features. It is rather diffcult to see how player No. 1 would be entertained when immediately following his play the dial reads 20 and he must step aside so as not to violate the rule against consecutive playing. It will not add to his entertainment when some stranger would step up and through the deposit of one five cent coin receive coupons worth one dollar in trade. It further appears in the evidence that the merchant or his employees may play the machine without violating any of the provisions of the plate. If this should happen, we can not see that player No. 1 would be overjoyed.

It is a matter of common knowledge that the American people have a propensity for gambling, some in a large way, and many more in a small way. We fail to see how there can be any entertainment afforded by merely hearing the wheels go round, nor in seeing a large number come up in the dial with no possibility of securing the coupons through the ban on consecutive playing. However, suppose instead of one individual playing they make up a little party of two, three, four, five or any number, and they play alternatively, thereby complying strictly with all restrictions, and play all day to their hearts' content. This is the testimony of one of the plaintiffs on page 37 of the record:

"Q. They could stand there all day and alternatively play back and forth between them and that would be within the restrictions on your machine?

"A. I would say it would be, yes."

What is the entertainment obtained under this way of playing? . Obviously, it is to try for the coupons, without any regard for the mints. It is the desire to gamble in a small way. It is a change in the technique from the old style slot machines played by one person and now outlawed by numerous court decisions throughout the state. The fact that one person can not gamble on plaintiffs' machines, does not distinguish the principle previously announced by our courts when we find that two or more may operate and invoke the objectionable features.

The merchant or his employees may prearrange and alternate with the individual for continuous play, without any violation of the restrictions. Where two or more play, or where the merchant and his customer play, neither will know what the dial will show on subsequent play, and that is where the gambling instinct is satisfied and the entertainment furnished.

In considering and determining the instant case we have carefully analyzed the following decisions:

**State v Krauss, 114 Oh St, 342;**

**Snyder v Swope, Safety Director of City of Lancaster, 23 OLR, 361;**

**Hussman et v Morris, 12 Abs 491;**

**Zimmerman v Tate, Greene County Court of Appeals, unreported (1930);**

**Steed v Tate, Greene County Court of Appeals (1930);**

**Morris v Village of London, Judge Hough of District Court of Appeals, unreported;**

**Snyder, D. B. A. Superior Confection Company v City of Alliance (Court of Appeals) 340 OLR, 544 (1931) (10 Abs 279);**

**Snyder, D. B. A. Superior Confection Company v McCune, 28 N.P., (N.S.) 506 (1931).**

All of the above cases are readily reconcilable upon a careful reading and analysis.

In Ohio v Krauss, 114 Oh St, supra, being a criminal action in which Krauss was charged with a violation of §13066 GC by exhibiting for gain or to win or gain money or other property a gambling device or machine.

In the first paragraph of the per curiam opinion the court calls attention to the fact that the statute introduced but a single witness, one Beckman, who testified that he played the machine in question three consecutive times, inserting a five cent piece each time; that he received mints on each play and that in addition, on the second play, he received checks. These checks were not presented by the witness for redemption nor merchandise in the store, but were retained, as he says, for evidence.

The next paragraph presents the testimony introduced by the defendant, wherein

he says that he did not cash the checks secured by the State's witness Beckman, and that on another occasion on the same day he refused to cash checks won by consecutive play by one Lind, and Lind testified to the same effect on behalf of the defendant. The defendant further testified that he did not permit the violation of the restriction on the plate as to consecutive play. In the next paragraph the court makes the following inquiry:

"On this date of the record, was there a case made of keeping a gaming device for gain in violation of §13066 GC?"

As a premise the court then quoted from 38 A.L.R., page 73:

"A slot machine, it has been said, is not per se a gambling device, since it may be used or played upon for an innocent purpose, and the courts cannot, therefore, take judicial notice that every slot machine is a gambling device, as the use to which it is put must determine its character. 12 R.C.L., 730."

"It is generally held that a slot vending machine, which, in return for a coin deposited therein, dispenses merchandise of the value of such coin, accompanied at occasional and uncertain intervals by a varying amount of money, trade checks, or coupons, is a gambling device."

"Nor is such a machine rendered innocuous by the fact that it indicates in advance of each deposit exactly what it will dispense; it being considered that, in such instances, the player gambles, not on the immediate return for the coin he deposits, but on the hope or chance that the indicator will show a profit on his next play."

On the following pages the court states in varying language that there was a failure of evidence to show that the machine in question was in fact used for any unlawful purpose. Under a criminal prosecution, the court is not permitted to go outside the record and speculate as to what might be done, but, of course, is confined as to what the evidence discloses was in fact done.

A mere moron in the law should have no difficulty in arriving at the conclusion that such play as was shown would not constitute gambling.

Attention is called to the first paragraph on page 348 of the opinion:

"If some gain or profit, or the right thereto, had been shown, a different question might have been presented, but the evidence stopped short of showing that the machine was operated as a means of securing something for nothing."

Also at the top of page 350:

"Others permit consecutive plays; but until a record is presented which shows consecutive plays, or consecutive alternate play, or some other manner of play, as a result of which premiums, checks, or coupons are received, which secure to the player or players something for nothing as a result of his play, we fail to see how there can be a violation of the statute."

Special attention is called in this quotation to the fact that the court uses the term "or consecutive alternate play."

The case of **Snyder v Swope, Director of Safety, 23 Ohio Law Reporter, page 361,** being a decision by the Court of Appeals of Fairfield County, decided June 14, 1922, is referred to in the Krauss case, supra. This is the case that the Court of Appeals of Hamilton County, in their determination of the Krauss case, held was in conflict with their decision. The Supreme Court, in determining the Krauss case, held there was no conflict. The original action in the Court of Common Pleas was brought by Snyder, and upon demurrer to the petition, same was sustained. Not desiring to plead further, final judgment was entered and the cause taken on error to the Court of Appeals, and in that court the judgment of the lower court was affirmed. The report contains copy of the petition in full. This involved the operation of a slot machine generally known as the Snyder machine. The petition sets out in full the restrictions on the operation as same were printed on the face of the machine and directly in view of the person operating. These restrictions were as follows:

"For five cents you will receive a package of O. K. Mints and .... premium checks."

We also quote the following from the petition:

"Just before the word premium there is a space, and by the operation of the machine there would appear in said space the word 'No' or a figure, indicating the even numbers from two to twenty. If before the purchaser works the said lever the word 'no' appears in said space the purchaser will receive nothing but said package of mints so purchased by him; but if a figure is in said space, he will receive, in addition to said package of mints so bought and paid for by him, two

or more checks or trading stamps according to the number of said space, which he sees, and therefore knows before said purchase exactly what he is to receive. Each of these trading stamps is good for five cents worth of goods in the store or place where said machine is operated or at any other place where another of said machines is so in operation; and said machine may be again operated by the use of such checks; in like manner. and with. the same result as the same is done with a nickel as above described, a package of said mints being always delivered upon the deposit of five cents."

It will be observed that this Snyder machine in question permitted consecutive play. It was claimed that because the operator would know what he would receive on the next play, that thereby the objectionable features as previously declared by the courts would be met.

Of course, this would be a mere subterfuge and there would be present the desire for continuous play in order to receive the additional checks and thereby satisfy the gambling instinct.

The application for injunctive relief was denied on the ground that the petition itself disclosed that the machine was a gambling device.

In the case of **Hussman v Morris, 13 Ohio Law Abstract, 491,** the judgment of the lower court granting injunction was sustained on the reasoning of the trial court. The statement of facts, as reported in the Ohio Law Abstract, is very brief. We have been able to secure and have before us the voluminous opinion of the trial court and therein is a full statement of the issues and quoted portions of the evidence upon which is based the finding of facts. There was no evidence of consecutive alternate play. There was evidence of consecutive play only and of such a character as was in direct violation of the restrictions and contract entered into between the merchant and Morris. While it was shown that the machines were used for the purpose of gambling, there was no evidence that Morris had any knowledge thereof. It was by reason of the fact that the evidence failed to show knowledge that the injunctive relief was granted.

In the instant case plaintiffs, through cross examination, present the evidence that consecutive alternate play would not be in violation of the restrictions, and thereby the case is to be distinguished from the facts presented in Ohio v Krauss, supra. It is also to be distinguished in that it is a civil action for injunction, whereas the Krauss case was a criminal action requiring a different form and degree of proof. The instant case is also to be distinguished from the Hussman case, wherein the evidence was limited to operation in direct and positive violation of the instructions on the plate of the machine and the terms of the contract. The presentation of this additional evidence in the instant case removes all application of the Hussman case.

Our case is very similar to that of Snyder v Swope, supra, except that in the reported case the fact of its being a gambling device was disclosed in the petition, whereas in the instant case it is presented through the evidence. There is also this difference that in the Snyder case the objectionable feature was through consecutive play, whereas in the instant case it would be through consecutive alternate play.

Attention is called to the case of Zimmerman v Tate, Sheriff, No. 326, decided February 13, 1930, in which case the Court of Appeals denied injunctive relief on the theory that the plaintiff had knowledge of the mechanical construction of the machine which permitted gambling. Under the facts it was shown that the machine paid money instead of coupons. A very simple operation in change of mechanism permitted this.

In the case of Steed v Tate, Sheriff, Greene County, No. 331, injunctive relief was denied for similar reasons.

At this point it may be proper to call attention to the fact that the two Greene County cases, as well as the Hussman case in Montgomery County, were decided by the Court of Appeals in (this) the Second Judicial District. Two members of the court as now constituted participated in the determination of these three cases.

There has been presented to us the unreported case of Morris v Village of London, being a decision by Judge Hough, of the United States District Court, who had before him facts involving a machine identical in construction with the two in the instant case. Injunctive relief was denied.

The case of **Snyder, doing business as the Superior Confection Company v the City of Alliance, reported in 34 Ohio Law Reporter, page 545,** being a decision by the Court of Appeals of Stark County, was a slot machine case, and while to be distinguished in some of its facts from the instant case, yet we find the reasoning of the court very interesting and helpful. Injunctive relief was denied.

We also find a very voluminous and able opinion rendered by Judge Reynolds, of

the Common Pleas Court of Franklin County. This is the case of **Snyder, doing business as Superior Confection Company v McCune, 25 N.P. (N.S.) 506.** Injunctive relief was denied.

We are unable to conclude that the plaintiffs present a case warranting the granting of the equitable relief prayed for.

The petition will be dismissed at plaintiffs' costs. Exceptions will be allowed.

HORNBECK, PJ, and KUNKLE, J, concur in judgment.