## GEVARAS v CLEVELAND (city) et

Municipal Court of Cleveland

Decided April 6, 1937

Julius A. Negin, Cleveland, for plaintiff.

Alfred Clum, Director of Law, Cleveland, and Raymond F. Dacek, Ass't. Director of Law, Cleveland, for defendants.

### OPINION

By CELEBREZZE, J.

This is an action in replevin filed by the plaintiff to recover from the defendants one Multiple machine, one Derby Day machine and one Preakness machine. Said machines were confiscated by members of the police department pursuant to a raid on

Gene's Fun House. Plaintiff owns and operates said business.

It appears from the evidence that on December 8, 1936, John J. Sullivan, a member of the Cleveland Police Deartment, entered plaintiff's place of business and played a pin machine known as Derby Day, which will be shortly described in detail. On his play Sullivan won four metal tokens which were automatically released by the machine. It is undisputed that with three of these tokens Sullivan purchased a package of cigarettes from Jack Donnell, an employee of the plaintiff. The evidence shows further that Sullivan left, only to return later with a patrol wagon. He arrested Jack Donnell and seized amongst other property the three machines in question. Jack Donnell was convicted of exhibiting a gambling device. Plaintiff admits that said machines were available to the use of the general public, including children.

The "Multiple" machine and the "Preakness" machine were exhibited in open court and the testimony of the witness Donnell described the operation of each of said machines.

The Multiple machine is so constructed that it slopes downward to the plunger end of the machine and the playing field consists of a sloping surface, with certain holes located in various portions thereof and each designated by a certain number. In addition thereto there are located thirty-three (33) different kinds of coil springs in the playing field, with a continuous coil spring along the edges of said field. These springs are constructed on pins and spaced in such a way as to deflect or propel the ball while the ball is rolling to the bottom of the playing field.

Play is commenced by inserting a coin in a slot, and the machine then emits a ball which the player starts to the top of the playing field by means of a spring plunger. Once the ball enters the playing field, its course is directed and controlled by means of the springs heretofore described and the law of gravity, and if the ball falls into one of the holes, the machine emits a number of tokens or metal discs, depending on the number of the hole in which it falls. These disks, the evidence shows, then entitle the player to re-play the same machine or any other machine of like character.

With respect to the Preakness machine, and it is admitted that the "Derby Day" machine is of like consruction, the testimony shows that the Preakness, in addition to a playing field which is constructed similarly to that of the Multiple machine heretofore described, has a back board which contains the pictures of seven (7) horses, each bearing the numerals one to seven, and an additional set of numbers on the back board designating the odds which the machine will pay if the ball is placed in a hole, the number of which corresponds to the illuminated or lighted number of the horse on the back board.

Play is commenced by inserting a coin in the slot, at which time, by mechanical means, one or any number or all the numbers in the horses on the back board are illuminated together with the numbers indicating the odds or the number of tokens which the machine will pay if the ball is dropped into a hole bearing a number corresponding to the number of the illuminated horse on the back board. The numbers on the horses and the numbers designating the odds are illuminated by means of a mechanism immediately after the coin is inserted, over which mechanism the player has no control whatsoever.

The playing field on the Preakness machine contains 28 coil springs and one continuous spring along the edges of the board, as well as numerous pegs or pins located over the entire field. The ball is propelled by means of a spring plunger to the top of the playing field, and from this point its course is directed and controlled by the springs, pins and the law of gravity as it rolls to the lowest portion of the field. If the ball falls in a hole, disks are emitted as above set forth. The tokens or metal disks which are paid can be used to play the same machine or any other machine of like nature.

The plaintiff asks for the return of this property, and defendants contend that they are gambling devices and, therefore plaintiff can have no property right therein and is not entitled to possession thereof.

The question for this court to determine is whether or not the machines heretofore described in detail and the subject of controversy herein are gambling devices. If these machines are gambling devices, the plaintiff, by reason thereof, must be denied the right to recovery therein; if, on the other hand, they are not gambling devices, then the plaintiff's right of recovery should be sustained and the property returned to him.

In approaching the determination of this question, the court refers to §2980 of the Municipal Code of Cleveland, which reads as follows:

"The city manager or any police officer of the city shall seize or direct to be seized, any instrument, device or thing used for the purpose of gambling, or on, by or with which money or other articles may be lost or won, and all such instruments, devices or things shall be demolished or destroyed under the direction of the city manager, upon it being adjudged by the court that such instruments, devices or things were used, kept or intended for the purpose of gambling. (R. O. §1780)."

and also reference is made to the state law, especially §13066, GC, which provides:

"Exhibiting gambling device for gain. Whoever keeps or exhibits for gain or to win or gain money or other property, a gambling table, or faro or keno bank, or a gambling device or machine, or keeps or exhibits a billiard table, for the purpose of gambling or allows it to be so used, shall be fined not less than fifty dollars and not more than five hundred dollars and imprisoned not less than ten days nor more than ninety days, and shall give security in the sum of five hundred dollars for his good behavior for one year."

Counsel have not cited nor has the court after diligent search found any previous decisions pertaining specifically to the machines herein described, but there have been a number of decisions rendered by the courts in which gambling devices have been described and defined.

What then constitutes a gambling device? A device is an instrument or machine. Gambling is gaming ▮▮▮▮▮▮ or playing for money or other property of value. State v Lark, 3 O.N.P. 155. And therefore a gambling device is an instrument or machine which permits one to ▮▮▮▮▮▮ play so that he may win or lose money or other property of value. Or "the tangible thing on which the game at which money is won or lost is played as distinguished from the game itself." 12 R.C.L. 726.

The Supreme Court of Ohio, in State v Krauss, 114 Oh St 342, in its opinion, defines a gambling device by quoting from 12 R.C.L. 730, and says:

"It is generally held that a slot vending machine, which in return for a coin deposited therein, dispenses merchandise of the value of such coin, accompanied at occasional and uncertain intervals by a varying amount of money, trade checks, or coupons, is a gambling device."

"Nor is such a machine rendered innocuous by the fact that it indicates in advance of each deposit exactly what it will dispense; it being considered that in such instances, the player gambles, not on the immediate return for the coin he deposits but on the hope or chance that the indicator will show a profit on the next play."

Although in the Krauss case it was held that there was no evidence that there was anything of value received by the operator, yet on page 350 the court says:

"Until a record is presented which shows consecutive plays, or consecutive alternate play, as a result of which premium checks, or coupons are received, which secure to the player or players something for nothing as a result of his play, we fail to see how there can be a violation of the statute."

The case of Snyder v Alliance, (1931) 41 Oh Ap 48, (10 Abs 279), holds that a mint vending machine which released tokens that were used in playing a baseball game thereon was a gambling device, and the court observed that the patron received something of value from continuous play "for amusement is a thing of value for which more money is spent perhaps than for any other purpose," and added that the amusement was not furnished to all patrons in the same quantity and at the same cost.

The Court of Appeals of the Second Appellate District, on February 17, 1934, decided in Brassel v Benham, 17 Abs 257, that:

"A mint vending machine operated through the means of depositing a coin and pressing a lever, which returns a package of mints with each operation, and in addition thereto returns redeemable coupons provided that there is indicated in the visible dial a number registered by the play of the immediately preceding player is a gambling device notwithstanding that each such machine bears a plainly visible copyright plate prohibiting consecutive plays or purchases by the same person."

Now, bearing in mind the statutory provisions and applying the general principles of law laid down in the foregoing authorities, and the many other authorities on the subject of gambling devices not herein specifically cited, are these machines, the

Multiple, the Preakness and the Derby Day gambling devices?

Man has exerted more energy in the invention of devices to evade and circumvent the spirit and purposes of laws designed to suppress gambling, than in any other field of censurable endeavor. This is very evident from the fact that in the case before us we are confronted with another cunning mechanical device. It is to the courts' credit as shown by decisions thus far rendered in the many states of the Union that the subterfuge of these ingenious devices were not permitted to go on undetected.

Gambling is the practice of indulging in games involving some element of chance or hazard with a view to pecuniary gain. The essential element of gambling is the chance or uncertainty of the hazard. It is not necessary that one of the wagers stands to lose. The chance or hazard taken by the player of the machines in question is: First, that he may win nothing; second, that if he wins the stakes vary from one token to many, depending upon the mechanism of the device. This court cannot conceive that persons will play these machines for the sole and express purpose of watching a ball roll into the playing field and fall into a pocket. The court is, however, of the opinion that the player is attracted to the machines by the fact that he may win. He may win from one to many tokens. The hope of winning more than he has paid in is aroused in the player. There is an immediate appeal to his gambling desire. There is the temptation of taking the chance of "beating" the machine. The player is offered the uncertain chance of getting something for nothing. One who keeps such a device as hereinbefore described, for the public generally to use, is offering to bet that the player will lose, and the player by his play is betting that he will win. These types of machines have a strong appeal to the young and inexperienced, and arouse the gambling instinct inherent in human beings.

The court is of the opinion that the conclusion is irresistible that these machines contain in and by themselves each and every element of gambling device as heretofore outlined.

The court, therefore, finds these machines to be evil instruments designed to circumvent the spirit and practices of the gambling laws. They are gambling devices per se and as such the plaintiff has no property right therein and therefore

. . .

the plaintiff is not entitled to possession of same. Accordingly, the court denies plaintiff the right of property and finding is made for defendant.